NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO M.W.

No. 1 CA-JV 25-0042

FILED 10-22-2025

---

Appeal from the Superior Court in Mohave County
S8015JD202200138
The Honorable Rick A. Williams, Judge

**AFFIRMED**

---

COUNSEL

Shannon D., Mohave Valley
*Appellant*

The Law Offices of Robert Casey, Phoenix
By Robert I. Casey
*Advisory Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Autumn Spritzer
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Vice Chief Judge David D. Weinzweig joined.

---

**B A I L E Y**, Judge:

¶1        Shannon D. ("Mother") appeals the superior court's order terminating her parental rights as to M.W. ("Child") on the statutory ground of fifteen months' out-of-home placement.  *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(8)(c).  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        We view the facts in the light most favorable to upholding the superior court's order.  *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010).

¶3        Mother is the biological parent of Child, who was born in October 2022.[1]  Mother was incarcerated when she discovered she was pregnant with Child.  Soon after her release, Mother met with friends who were using methamphetamines, and when Child was born, Mother and Child tested positive for methamphetamines.  Mother disclosed she had used methamphetamines two days before Child's birth.

¶4        The Department of Child Safety ("DCS") asked Mother about her plan for caring for Child.  Mother stated she wanted to have Child stay with a "friend" she met while incarcerated but could provide no address or contact information for this friend.  DCS filed a dependency petition within a week after Child was born, and the court found Child dependent as to Mother.  DCS first located a kinship placement, where Child resided until moving to his current placement, which was established as the least restrictive option.

¶5        During the dependency, DCS referred Mother to several treatment services for her substance abuse and parenting skills issues.

---

[1] Child's alleged biological father, Derrick W., is not a party to this appeal, but his parental rights as to Child were terminated in December 2023.

Initially, Mother did not fully engage in services and missed several drug tests. Her referrals eventually closed out based on lack of participation.

¶6        In 2023, Mother began engaging in parenting skills and substance abuse services. She participated in drug testing between 2023 and 2025, and although she tested negative every time she participated, she also missed a significant number of test dates. Mother also engaged in weekly supervised visits with Child throughout the nearly three years of his out-of-home placement. But Mother never asked for unsupervised visits, ostensibly because DCS had expressed safety concerns about her boyfriend, Tyler G.

¶7        Mother met Tyler G. in March 2022, when she was pregnant with Child. They began a romantic relationship and moved in together four months later. DCS identified Tyler G. as a safety risk to Child due to his illegal drug use and extensive criminal history. DCS further expressed concern over his unwillingness to engage in drug treatment and parenting skills services. DCS made Mother aware that her relationship with Tyler G. made unsupervised visits impossible and effectively foreclosed Mother from regaining custody of Child. Despite these concerns, Mother continued the relationship, becoming pregnant with Tyler G.'s child in early 2024 and signing a one-year lease with him in June 2024. In January 2025, Tyler G. was sentenced to 1.5 years' imprisonment. The superior court found Mother "kind of double[d] down by getting pregnant by [Tyler G.] and being in a committed relationship with him" while disregarding that the relationship prevented Child from returning home.

¶8        In September 2024, the superior court granted DCS's oral motion for a change in case plan to severance and adoption, and DCS moved to terminate Mother's parental rights based on the fifteen months' out-of-home placement ground. *See* A.R.S. § 8-533(B)(8)(c). In February 2025, the superior court held the termination trial, and after taking the matter under advisement, terminated Mother's parental rights.

¶9        Mother timely appealed. We have jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

## DISCUSSION

¶10        We note first that Mother has waived her arguments on appeal because she offered no record citations or supporting legal authorities in her brief. *See* Arizona Rule of Civil Appellate Procedure ("ARCAP") 13(a) (requiring that briefs contain "citations of legal authorities and appropriate references to the portions of the record on

which the appellant relies"); Ariz. R.P. Juv. Ct. 607(b) (applying ARCAP 13 to juvenile appeals). But we exercise our discretion to address Mother's arguments because a child's best interests are at issue. *DeLong v. Merrill*, 233 Ariz. 163, 166, ¶ 9 (App. 2013); *Nold v. Nold*, 232 Ariz. 270, 273, ¶ 10 (App. 2013) (noting that the child's best interests trump the discretionary doctrine of waiver).

**¶11** To terminate parental rights, the superior court must find a statutory ground under A.R.S. § 8-533(B) by clear and convincing evidence, and that termination is in the child's best interests by a preponderance of the evidence. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149–50, ¶ 8 (2018).

**¶12** We review the superior court's termination order for an abuse of discretion. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," we will affirm an order terminating parental rights if supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citations omitted).

I.      Fifteen Months' Out-of-Home Placement Ground

**¶13** The superior court may terminate parental rights under the fifteen months' out-of-home placement ground if it finds by clear and convincing evidence that (1) the child has been in an out-of-home placement for at least fifteen months; (2) DCS has made a diligent effort to provide appropriate reunification services; (3) the parent has been unable to remedy the circumstances that caused the out-of-home placement; and (4) "there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future." A.R.S. § 8-533(B)(8)(c). The "circumstances" are those "existing at the time of the severance that prevent a parent from being able to appropriately provide for his or her child." *Jordan C.*, 223 Ariz. at 96, ¶ 31 n.14 (citation modified).

**¶14** Mother does not contest the court's finding on the first two out-of-home placement factors, but does contest the last two: that she has been unable to remedy the circumstances that caused the out-of-home placement, and that there is a substantial likelihood she will be incapable of exercising proper and effective parental care and control in the near future. In support, Mother cites her negative drug tests before trial and her completion of parenting and substance abuse classes. She contends she has

an appropriate place for Child to live, has an appropriate way to provide for Child, and has resolved DCS's primary safety concern as Tyler G. is no longer in the home.

¶15        Despite Mother's efforts, Child has been out of her care for almost three years.  Child was initially found dependent as to Mother due to her drug abuse and failure to provide a safe living option for Child, as evidenced by her suggestion that Child live with a formerly incarcerated "friend."  And while Mother has, at least in part, remedied her drug issues and improved her parenting skills, she has continued to put Child in situations that raised safety concerns.  Despite that Mother knew DCS considered Tyler G. a safety barrier to reunification with Child, she refused to end the relationship.

¶16        Mother contends the safety concern with Tyler G. is resolved, and argues that she is not reliant on him and will protect Child if Tyler G. does not "keep his act together."  But DCS's concern was only temporarily "remedied" at the time of trial because Tyler G. became incarcerated.  Mother recently had a child with Tyler G., his name is on her current lease, she is still dependent, in part, on money from him for her basic living expenses, and their lengthy relationship shows Mother's unwillingness to put Child before him.  Further, although Mother had an option to move to Maricopa County to be closer to Child and additional support during the dependency, she chose to stay in Mohave Valley to live with Tyler G.  *See Alma S.*, 245 Ariz. at 152, ¶ 19 ("*Even if the Court accepts Mother is being honest and she is no longer in a relationship with Father, it is literally too little too late to demonstrate that she is willing to protect her children from an abusive person.*").  On this record, Mother has not shown that she has fully remedied the circumstances that caused the out-of-home placement, particularly as to Child's safe living conditions.  The court, therefore, did not abuse its discretion by concluding that a substantial likelihood exists that she will not be capable of exercising proper and effective parental care and control in the near future.

¶17        Mother further argues the superior court "did not adequately consider the totality of [her] efforts" to reunify with Child.  Mother's argument is a request to reweigh the evidence, which we will not do.  *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12 (App. 2002).

¶18        The superior court did not abuse its discretion in finding the statutory ground of A.R.S. § 8-533(B)(8)(c) was established by clear and convincing evidence.

II.     Best Interests

**¶19**         Mother also argues the superior court erred in finding that termination of her parental rights was in Child's best interests. Termination is in a child's best interests if he or she will benefit from termination or be harmed if termination is denied. *Alma S.*, 245 Ariz. at 150, ¶ 13. The court may find a child would benefit from termination if an adoption plan exists or if the child is adoptable. *See id.* at 150-51, ¶¶ 13-14. The court may also find a child will benefit from the permanency and stability an adoption would provide. *See Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 337, ¶ 16 (App. 2004); *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352 (App. 1994). Conversely, the court may find termination of the parent-child relationship is in the child's best interests if continuing the relationship would harm the child. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 16 (2016) (citations omitted).

**¶20**         Mother contends Child will be harmed by severing the parent-child relationship, as Child knows her as his biological mother. But Child has been in foster care for his entire life—nearly three years—and the placement has provided Child with safety and stability. Further, the court found that allowing Mother to retain her parental rights would likely cause Child to "languish in the State's custody" and hinder his ability to obtain permanency. Child is thriving in the current placement's care, a potential adoptive placement, and the superior court did not abuse its discretion in finding that termination of Mother's parental rights would be in Child's best interests.

## CONCLUSION

**¶21**         We affirm.

